MATTER OF WILLIAMS

In Deportation Proceedings

A-5378538

*Decided by Board June 14, 1966*

Active opposition to the doctrine, principles and ideology of the Communist Party is established within the meaning of section 212(a)(28)(I)(ii)(a), Immigration and Nationality Act, where respondent, a public figure, declared publicly his break with the Party and that the Party is not the answer to U.S. problems, he has fought Party efforts to use his deportation proceedings to get attention and funds, he has repeatedly expressed willingness to cooperate with the government, his reputation is good and he is considered by his neighbors and acquaintances to be loyal to this country and anti-communist; further, respondent's remaining in the United States would be in the public interest within the meaning of section 212(a)(28)(I)(ii)(b) of the Act since he has been here for 55 years, having entered at age one, his family resides here, his deportation would result in hardship to him and would have an adverse effect on international opinion, and his present actions are designed to uphold and inculcate a positive belief in the American way of life and the continuing lesson resulting from the fact a well-known former communist has found that communism is not the answer to American problems.

CHARGE:

Order: Act of 1952—Section 241(a)(6) [8 U.S.C. 1251(a)(6)]—Member of the Communist Party after entry.

Two appeals are before us. The special inquiry officer granted respondent's application for adjustment of status (section 245 of the Act) but denied his application for suspension of deportation (section 244(a)(2) of the Act). The trial attorney appeals from the special inquiry officer's grant of the adjustment of status; respondent appeals from the denial of suspension of deportation. We believe that the adjustment of status was properly granted; we shall not consider the issues presented by the respondent's appeal. Both appeals will be dismissed.

The facts have been stated in great detail in the previous orders. Briefly, the only entry of respondent, a 60-year-old married male, a

native of Wales and citizen of Great Britain, occurred on December 21, 1907 when at the age of one he was admitted for permanent residence. The respondent is charged with having been a member of the Communist Party. He admitted that he joined the Communist Party in 1931, that he left in 1947 for tactical reasons, and that his ideological break with the Party may not have come until as much as three years later. He testified that he never believed in force and violence, and that he was primarily interested in trade union activity. His deportability is clear.

The issue concerning the application for adjustment of status is whether the special inquiry officer was justified in finding that in the five years prior to November 11, 1964, the date of respondent's application, he had been a defector, i.e., a person "actively opposed to the doctrine, program, principles, and ideology" of the Party and whether adjustment would be in the public interest (section 212(a) (28) (I) (ii) of the Act).

The special inquiry officer found that the respondent was a defector. The special inquiry officer relied upon the example furnished by the respondent's conduct, his disassociation from Communist Party friends, his public statements, and his offers of assistance to the Government. The Service contends that respondent's membership may have continued until 1956 (respondent on four occasions in 1955 and 1956, and possibly once in 1958, attended public meetings of Communist Party front organization because of his interest in fighting deportation of aliens and revising immigration laws) that he never strongly expressed himself against communism, that his willingness to help the Government must be considered in light of his refusal to give names of Communist Party members, and that he has furnished no proof that he gave speeches, prepared writings or performed other acts in opposition to the program of the Communist Party. The Service is of the belief that highly meritorious factors do not exist in the case.

The requirement concerning active opposition by a former Communist Party member is to insure that he "adequately demonstrates his redemption" and to specify the active opposition by which the demonstration is to be made (S. Rept. No. 1137, 82nd Cong., 2d Sess. 10 (1952)). We believe the respondent's redemption and active opposition are established by the record. The respondent is a public figure. He was a leader in Communist Party affairs (a candidate for the Michigan State legislature on the Communist Party ticket in 1946) and he was a leader in union matters (a business representative for 13 years and apparently among the early organizers of a union for auto workers). The fact that he is well known to the pub-

lic gives added weight to his publicly declared break with the Communist Party and his public statement that the Communist Party is not the answer to United States union or other problems. His public position must have a considerable impact on the wide public aware of his previous Communist Party activity and must therefore be considered active opposition to the Communist Party. (The fact that respondent's public statements were made in connection with his deportation proceedings does not deprive them of their impact.)

Active opposition to Communist Party policies and program can also be found in the fact that respondent has fought efforts of the Communist Party and its front organization to use his deportation proceeding to get attention and funds. His vigorous fight to avoid deportation has been made an AFL-CIO union effort (pp. 82-3). The United Auto Workers Union, despite considerable difficulty caused them in the past because of the respondent's Communist Party activities, believes that he has reformed, and is furnishing legal support for effort to avoid deportation.

Active opposition can further be found from the following facts: in 1961, he furnished the Federal Bureau of Investigation with details of his Communist Party membership, naming individuals who were active with him in the Communist Party and expressing his willingness to testify against the Communist Party and against the then chairman of the Party; in 1958, in connection with a motion to this Board to reopen proceeding, he made an affidavit offering to testify as to any matters concerning his Party membership; in 1957, when seeking congressional aid in his fight to avoid deportation he offered to cooperate; on two separate occasions in 1955 he offered to appear before the House Un-American Activities Committee. (True he limited his offer to the Committee by stating he would not reveal names, but the important thing is that he offered to appear and cooperate; he now states that if he had been called and had been pressed to give names, he would have done so.)

Activity in opposition to the Communist Party can be found in the fact that respondent is actively engaged as advisor to a youth group in his church—living a Christian life, he seeks to encourage others to follow such a life.

Respondent's reputation is good. His pastor, who has known respondent since 1957, regards him as a genuine convert and a person loyal to the United States. He states that respondent attends worship regularly and is active in church affairs. Four of respondent's neighbors who have known him since about May 1959 considered him an asset to the community: one stated that she believed he had an American attitude. No derogatory information was received. The

president of the company which employed the respondent since 1955 told of his progress from laborer to that of a qualified journeyman carpenter and stated that respondent is reliable and of good moral character.

By letter dated November 26, 1958 the Greater Detroit and Wayne County Industrial Union Council in conformity with the request of the Michigan AFL–CIO asked all its affiliated local unions to give the respondent a chance to be heard on his case and to help him. The county auditor of Wayne County, Michigan, who characterizes himself as "a commie fighter from a way back" stated (1960, 1963) that he knew the respondent when he was a "commie," that he is convinced respondent is telling the truth, and that in the past ten years respondent has been of good moral character. The president of the Common Council of the City of Detroit, Michigan in an affidavit sworn to on November 6, 1963 stated that over the past ten years respondent had demonstrated that he was of good moral character.

We believe the respondent's activities which have caused neighbors and acquaintances to conclude that he is loyal to the United States and anti-Communistic establish his redemption and bring him within the exception provided by law.

We believe that the respondent's stay in the United States would be in the best interest of this Government. His home has been in the United States for 55 years (he entered at the age of one). His wife, child and siblings reside in the United States. He has no family abroad. At his age he would find difficulty obtaining employment (he has limited use of one arm). His brother was killed fighting for the United States.

Respondent's case has aroused considerable publicity. An editorial calls American law and justice radically wrong for making persons such as respondent deportable; a newspaper account states his case was the subject of a debate in the House of Commons in England and that the British Government had indicated to the State Department that respondent would suffer undue hardship if he was deported to a country he does not know and where no one knows him.

Considering the adverse effect his deportation would have on international opinion, the hardship his deportation would bring, the fact that his present actions are designed to uphold, and inculcate a positive belief in the American way of life, and the continuing lesson resulting from the fact that a well-known former Communist has found that communism was not the answer to American problems, we believe that respondent's stay in the United States would be in the best interest of this Government.

In support of his contention that respondent should have been granted suspension of deportation, counsel states that administrative and judicial rulings in the past have fixed the date of the respondent's termination of Communist Party membership as not extending beyond 1950; that whatever may have been the time respondent severed ties with the Communist Party it having occurred formally and ideologically before 1953 which is ten years prior to the date on which the application for suspension was filed could not serve as a basis for denial of the application.

ORDER: It is ordered that the Service appeal from the grant of adjustment of status be and the same is hereby dismissed.

*It is further ordered* that the respondent's appeal from the denial of his application for suspension of deportation be and the same is hereby dismissed.